```
            IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
ALAN M. GROCHAL,
LIQUIDATING AGENT              *

       Appellant,              *     CIVIL NO.: WDQ-07-0028

v.                             *

BALTIMORE MARINE               *
INDUSTRIES, INC.
                               *
       Appellee.
                               *

*   *   *   *   *   *   *   *   *   *   *   *   *
```

MEMORANDUM OPINION

On June 30, 2003, the Debtor filed, in the Bankruptcy Court, a Motion for Approval of Severance Agreements (the "Motion") seeking to make payments under individual severance agreements between the Debtor and 21 employees of Baltimore Marine Industries ("BMI"). Alan M. Grochal, the Liquidating Agent for BMI's bankruptcy, opposed the Debtor's motion. On December 22, 2006, the Bankruptcy Court granted the Motion. Grochal timely appealed the Bankruptcy Court's order.

Pending is Grochal's appeal. For the reasons discussed below, the Bankruptcy Court's order will be affirmed.

I.   Background

BMI owned and operated a diversified, full-service shipyard. Around the time BMI filed the bankruptcy petition, in June 2003,

1

it was working on two ships for the U.S. Navy, the U.S.S. Dahl (the "Dahl") and the U.S.S. Mahan (the "Mahan"). At that time, the Dahl project was 90% complete.

On June 4, 2003, BMI executed 21 severance agreements (the "Agreements"). Under the Agreements, BMI would pay a given employee between one and three month's salary if he or she were terminated by BMI; employees were not eligible if they resigned or were terminated for cause. Bankr. Tr. 29. By the end of July most of the 21 employees had been terminated.

On June 11, 2003, BMI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On June 30 the Motion was filed.

On June 25, 2004, the Bankruptcy Court entered an Order Approving Proposed Joint Disclosure and Confirming Joint Plan of Liquidation (the "Plan"), which appointed Grochal as the Liquidating Agent and explicitly retained BMI's right to prosecute the Motion. Nearly two years later, on March 14, 2006, Grochal filed an objection to the Motion. A hearing on the Motion was initially scheduled for May 4, 2006, but was continued to July 10, 2006 and September 21, 2006; it ultimately occurred on December 14, 2006. At the conclusion of the hearing, the Bankruptcy Court granted the motion as to 20 of 21 employees. The Bankruptcy Court specifically determined that: (1) laches did not prohibit the prosecution of the motion; (2) BMI appropriately

exercised it's business judgment in engaging in the Agreements; (3) the employees preserved the assets of the estate and assisted in the sale of the shipyard; and (4) the amounts paid were reasonable.  Bankr. Tr. 76-81.  On December 22, 2006, the Bankruptcy Court entered an order granting the motion.

II. Analysis

Grochal appeals the Bankruptcy Court's decision, arguing that: (1) the doctrine of laches precludes prosecution of the Motion; (2) the payments under the Agreements were not permissible administrative expenses; (3) the court should have deferred to his business judgment; and (4) even if the court appropriately looked to BMI's business judgment, BMI did not properly exercise it.  BMI counters that: (1) Grochal procedurally waived some issues on appeal; (2) laches does not apply; (3) the payments were proper; and (4) the Bankruptcy Court correctly relied on BMI's valid business judgment.

A.  Standard of Review

The district court, when hearing an appeal from the bankruptcy court, acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*.  Fed. R. Bankr. P. 8013; *In re Modanlo*, 2006 WL 4486537, *2 (D. Md. 2006) (*citing In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992)).

B.   Discussion

i.   Procedural waiver

BMI argues that since Grochal's arguments do not match the statement of issues for appeal, the issues stated and not argued are abandoned. *11126 Baltimore Blvd., Inc. v. Prince George's Cty., Md.*, 58 F.3dd 988, 993 n7 (4th Cir. 1995). Grochal counters that no procedural bar applies because all of the issues were argued. Although the stated issues for appeal do not perfectly correlate to the arguments offered by Grochal, waiver/abandonment will not be at issue unless and until Grochal subsequently offers argument based on the portion of the issues stated, but not argued herein. Accordingly, there is no procedural bar to Grochal's arguments.

ii.  Laches

Grochal argues that the doctrine of laches should prevent BMI from pursuing the Motion. Traditionally, the doctrine of laches "may be applied by a court to bar a suit in equity that has been brought so long after the cause of action accrued that the court finds that bringing the action is unreasonable and unjust." *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 798 (4th Cir. 2001). Laches applies if Grochal proves: (1) lack of diligence by BMI; and (2) prejudice to Grochal, i.e., the estate. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990).

The first element exists "where the plaintiff delayed inexusably or unreasonably." *Id*. Here, the petition was filed June 11, 2003 and the motion filed on June 30, 2003. In 2004, the Plan reserved BMI's right to prosecute the Motion. In March 2006, Grochal filed an objection to the Motion and hearings were scheduled and continued until one was ultimately held on December 14, 2006. BMI was diligent from March to December 2006; the question is whether the delay from June 30, 2003 was inexcusable or unreasonable.

The Bankruptcy Court found that beginning in June 2003 and throughout the bankruptcy process, the Motion was continued by the consent of the parties. Bankr. Tr. 77. As Grochal has offered no evidence indicated that the Court's factual conclusion as to consent was clearly erroneous, the Court concludes that BMI did not delay inexusably or unreasonably.

Turning to the question of prejudice, the Fourth Circuit has stated that "the greater the delay, the less the prejudice required to show laches, and vice versa." *White*, 909 F.3d at 102. Here, the delay was neither inexusable nor unreasonable. Moreover, Grochal "is ultimately required to prove prejudice." *Id*. Grochal argues that prejudice occurred because the grant of the motion caused money that would have been disbursed to creditors to be disbursed to the former employees. Grochal concludes, correctly, that this will cause the payout to

5

creditors to be reduced. However, this reduction would have occurred upon granting the motion whether or not its prosecution was delayed. As the prejudice must occur as a result of the delay, the reduction in payout is not grounds for laches.

Grochal argues that some of the participants may not have voted for the Plan if they had known about the potential payments under the Agreements. Although it is conceivable that participants may have relied on projections which did not incorporate the effect of payments under the Agreements (because of the delay), there is no evidence that anybody did so. As Grochal has failed to demonstrate any prejudice that would not have occurred *absent the delay*, the Court concludes that the prejudice necessary to apply laches does not exist. Accordingly, the Bankruptcy Court's finding as to laches will be affirmed.

iii. Permissibility of the Payments

Grochal argues that the payments under the Agreements are not allowable administrative expenses. Proper administrative expenses must be: (1) the actual, necessary costs and expenses of preserving the estate; and (2) incurred postpetition. *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865-66 (4th Cir. 1994).

The testimony is that BMI negotiated prepayment on the Dahl contract with the Navy in an effort to keep BMI afloat. In exchange for the prepayment, the Navy required assurance that the work would be completed. Bankr. Tr. 19-20. In order to create

6

that assurance, BMI needed to retain its employees. BMI entered into the Agreements in an effort to convince them to stay despite BMI's financial difficulties. *Id*.

The employees, convinced to stay by the Agreements, "brought in more cash than was expended to do the work" and their efforts avoided claims against BMI by the Navy that would have occurred in the event of default. *Id*. 20. Upon a careful review of the transcript, this Court concludes that the Bankruptcy Court was not clearly erroneous in finding that the work performed by the employees was essential to "preserve the assets of the estate by keeping down the claims that might have been filed." *Id*. 77-78.

Grochal's only counterargument is that the employees were terminated so soon after petitioning for bankruptcy that they could not have preserved the assets of the estate. Although this argument may have some merit with respect to BMI's assertions regarding the benefits accrued by the estate by employee efforts to clean up after hurricane Isabel, the employees' efforts after June 11 in completing the Dahl are sufficient to find that the payments under the Agreements are proper administrative expenses.

iv. Business Judgment

Grochal argues that the Bankruptcy Court should have deferred to the Liquidating Agent's business judgment. Grochal's business judgment argument is misdirected, however, as he argues that the Liquidating Agent's *objection* to payment under the

7

Agreements should be accorded the benefit of business judgment. The relevant question, however, is whether BMI properly exercised its business judgment in offering the Agreements to the selected employees.  Grochal's business judgment is entitled to some deference upon his appointment.  However, the record is clear that the Agreements were entered, and the Motion made, before his appointment.  Moreover, in the Plan, which appointed the Liquidating Agent, the rights under the Motion were preserved.  Accordingly, only the business judgment of the Debtor is at issue.

The Debtor has the burden of proving that a sound business reason exists for entering into the Agreements and that they will benefit the estate.  *In re Allied Holdings, Inc.*, 337 B.R. 716, 722 (Bankr. N.D. Ga. 2005); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 155 (Bankr. D. Del. 1999).  The Court concludes that the Bankruptcy Court did not err in finding that the Debtor entered into the Agreements to finish the Dahl, increase cash-flow, and demonstrate that it could engage in additional business.  Although these efforts proved unavailing in BMI's efforts to resolve its financial problems, that fact does not negate BMI's exercise of business judgment at the time.  Moreover, this Court finds no reason to conclude that the Bankruptcy Court incorrectly found that the severance payments were reasonable.  Bankr. Tr. 81.  Accordingly, this Court

concludes that BMI appropriately exercised its business judgment in deciding to offer the Agreements to retain employees to finish the Dahl.

III. Conclusion

    For the reasons discussed above, the December 22, 2006 order of the Bankruptcy Court will be affirmed.


<u>July 3, 2007</u>                                                 <u>     /s/                 </u>
Date                                                     William D. Quarles, Jr.
                                                      United States District Judge